**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP Nos.   EC-13-1409-KuPaJu |
| ) | EC-13-1410-KuPaJu |
| DDJ, INC., ) | |
| ) | Bk. No.   05-10001 |
| Debtor.     ) | |
| _____ ) | |
| JOE FLORES; CONNIE FLORES,   ) | |
| ) | |
| Appellants,   ) | |
| ) | |
| v.                          ) | **MEMORANDUM**[*] |
| ) | |
| JAMES E. SALVEN, Chapter 7   ) | |
| Trustee; DDJ, INC.; ROBERT   ) | |
| ROSE; STATE OF CALIFORNIA    ) | |
| FRANCHISE TAX BOARD; UNITED  ) | |
| STATES TRUSTEE,              ) | |
| ) | |
| Appellees.   ) | |
| _____ ) | |

Submitted Without Oral Argument
on May 14, 2015[**]

Filed - May 29, 2015

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Fredrick E. Clement, Bankruptcy Judge, Presiding

Appearances:     Appellants Joe Flores and Connie Flores, pro se,
on brief; Thomas H. Armstrong, on brief, for
Appellee James E. Salven, chapter 7 trustee

Before: KURTZ, PAPPAS and JURY, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**]By order entered on August 15, 2014, a motions panel determined these appeals suitable for submission on the briefs and record without oral argument.

**INTRODUCTION**

Joe and Connie Flores appeal pro se from an order of the bankruptcy court overruling their objections to chapter 7[1] trustee James Salven's final report in the DDJ, Inc. bankruptcy case. Because none of the Floreses' factual or legal contentions on appeal have any merit, we AFFIRM.

**FACTS**

In 2004, the Floreses obtained a judgment after a jury trial against DDJ, Inc. and its affiliate DDJ, LLC. Since that time, the Floreses have been attempting, unsuccessfully, to collect on that judgment. In 2005, both DDJ, Inc. and DDJ, LLC commenced their chapter 7 bankruptcy cases, and Salven was duly appointed to serve as the chapter 7 trustee in the DDJ, Inc. bankruptcy case.[2] Both before and after the bankruptcy filings, the Floreses in furtherance of their collection efforts have sued a host of individuals and entities related to the debtors. The specifics of this litigation and the parties involved are not material to our resolution of this appeal, except to note that none of the litigation has resulted in the Floreses successfully collecting on their judgment.

A dispute arose between the debtors, their bankruptcy

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2]Even though someone other than Salven was appointed to serve as the chapter 7 trustee for DDJ, LLC, Salven effectively became responsible for the assets of both estates as a result of a September 2007 settlement between the Floreses and Salven, among others, as described infra.

2

trustees and the Floreses regarding, among other things, who was entitled to pursue claims against third parties. One of the critical issues was whether the claims in question belonged to the debtors' bankruptcy estates or to the Floreses. The Floreses, Salven and the DDJ, LLC trustee entered into a settlement, which was approved by the bankruptcy court in September 2007, and which cleared the way for Salven to sell the estates' interest in the litigation to a group of defendant entities. As one of the settlement terms, the parties agreed that all of DDJ, LLC's rights were to be assigned to DDJ, Inc. Another settlement term provided that Salven as the chapter 7 trustee for DDJ, Inc. would pursue all claims on behalf of both DDJ, Inc. and DDJ, LLC.[3]

The Floreses later sought to vacate the order approving the settlement, but the bankruptcy denied the Floreses' motion to vacate that order and all other attempts by the Floreses to undo the settlement and Salven's claims sale.

After extensive and repetitive disputes with the Floreses, Salven sought and obtained from the bankruptcy court an order declaring the Floreses to be vexatious litigants. Before entering that order in February 2012, the court issued detailed and comprehensive findings of fact addressing each of the

---

[3]In addition to reviewing the record presented by the parties, we also have reviewed the bankruptcy court's electronic docket in the underlying bankruptcy case and the imaged documents attached thereto. We can take judicial notice of the filing and content of those documents. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mrtg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

3

vexatious litigant standards articulated by the Ninth Circuit Court of Appeals. Among other things, the court's analysis included an examination of the myriad motions the Floreses had filed since the beginning of 2011 in both debtors' bankruptcy cases and concluded that all of the Floreses' motions since at least the beginning of 2011 were frivolous.

The bankruptcy court narrowly tailored its vexatious litigant order to address the specific problem it perceived – the Floreses' frivolous filings in the debtors' bankruptcy cases. The order in relevant part required the Floreses to obtain advance approval from any bankruptcy court in the Eastern District of California before filing any additional papers in the debtors' bankruptcy cases. The order also set forth specific procedures the Floreses needed to follow if they sought to obtain such approval.

The vexatious litigant order is a final order. The Floreses have exhausted all of their appeal rights with respect to that order and have not obtained its vacatur or reversal. More specifically, the BAP entered an order dismissing as moot roughly twenty of the Floreses' appeals, including their appeals from the vexatious litigant order, because the sole remaining asset of the bankruptcy estates over which the parties were litigating – their claimed interests in a state court lawsuit – had become valueless: the state court lawsuit had been dismissed and that dismissal had been affirmed on appeal.

In turn, the Floreses appealed the BAP dismissals to the Court of Appeals, but the Court of Appeals denied the Floreses' request to pursue their appeals in forma pauperis and ultimately

4

dismissed their appeals for nonpayment of the filing fees. The Court of Appeals issued mandates returning full jurisdiction to the bankruptcy court during the first week of August 2013.

In April 2013, the bankruptcy court entered an order in DDJ, Inc.'s bankruptcy case approving the final fee application of Thomas Armstrong, Salven's general counsel. That application was unopposed, and no timely appeal was taken from the order.

In June 2013, Salven filed his final report, and notice was issued to the estate's creditors and interested parties advising them that, if they objected to the final report, they needed to file a written objection within twenty-one days. In July 2013, the Floreses filed several papers with the court in opposition to Salven's final report. The Floreses asserted that the bankruptcy court lacked jurisdiction to approve the final report while their appeals to the Ninth Circuit were pending. The Floreses also asserted that the court should not approve the final report because many of the prior orders of the bankruptcy court were void and invalid. In this respect, the Floreses' opposition papers largely reiterated the arguments they had made in the bankruptcy court in 2011 and before. More importantly, before filing their opposition papers, the Floreses did not make any attempt to comply with the pre-filing procedures imposed on them by the vexatious litigant order.

After Salven filed a reply and the Floreses filed a sur-reply (again without complying with the vexatious litigant order), the bankruptcy court held a hearing on the Trustee's final report, at which time it concluded that there was no remaining jurisdictional impediment to it considering Salven's

5

final report because the Court of Appeals by that time had disposed of all of the Floreses' appeals. The court proceeded to overrule the Floreses' opposition to the final report because the Floreses had not complied with the vexatious litigant order. The court entered an order memorializing this ruling on August 20, 2013.

On August 22, 2013, the Floreses timely filed a notice of appeal from the order overruling their opposition to Salven's final report.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). Except as noted in the jurisdiction discussion set forth below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Do we have jurisdiction over the portions of the Floreses' appeal challenging the order approving Armstrong's final fee application?

2. Did the bankruptcy court abuse its discretion when it overruled the Floreses' objections to Salven's final report?

## STANDARDS OF REVIEW

We review jurisdictional issues de novo. See Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard), 729 F.3d 1279, 1284 (9th Cir. 2013).

As with most rulings concerning estate administration, we review the bankruptcy court's order on the trustee's final report for an abuse of discretion. See, e.g., Goodwin v. Mickey Thompson Entm't. Grp., Inc. (In re Mickey Thompson Entm't. Grp.,

6

Inc.), 292 B.R. 415, 420 (9th Cir. BAP 2003) (reviewing compromise order for abuse of discretion); Vu v. Kendall (In re Vu), 245 B.R. 644, 647 (9th Cir. BAP 2000) (reviewing abandonment order for abuse of discretion).

The bankruptcy court abuses its discretion when it applies an incorrect legal standard or when its findings are illogical, implausible or without support in the record. See United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

**DISCUSSION**

While the Floreses timely appealed the order overruling their objections to Salven's final report, the Floreses also seek by way of this appeal to challenge the court's order approving Armstrong's final fee application. The court entered that order in April 2013, but the Floreses did not file their notice of appeal until August 2013. The order disposing of Armstrong's final fee application was a final order subject to immediate appellate review. See, e.g., Circle K Corp. v. Houlihan, Lokey, Howard & Zukin, Inc., (In re Circle K Corp.), 279 F.3d 669 (9th Cir. 2002). As such, the Floreses needed to appeal that order within the fourteen-day time period set forth in Rule 8002(a). See Anderson v. Kalashian (In re Mouradick), 13 F.3d 326, 327 (9th Cir. 1994).

Rule 8002 is jurisdictional. The untimely filing of the notice of appeal deprives this Panel of jurisdiction to review the bankruptcy court's order granting the fee application. Id.; see also Bowles v. Russell, 551 U.S. 205, 214 (2007) ("The timely filing of a notice of appeal in a civil case is a jurisdictional requirement.").

7

Consequently, we cannot consider any of the Floreses' arguments challenging the order granting Armstrong's fee application. It does not matter whether the Floreses assert that the order is void or merely wrong. We have no authority to review or consider the order given the untimeliness of the Floreses' appeal.

Nonetheless, we can and will review the bankruptcy court's order overruling the Floreses' opposition to Salven's final report. The Floreses' main argument is that the order is void because the bankruptcy court lacked jurisdiction to approve the final report. According to the Floreses, in light of their Ninth Circuit appeals, the court could not rule upon Salven's final report.

Generally speaking, when an appeal is taken from a trial court's final judgment or order, the trial court is divested of most of its authority to hear and decide matters in that same case. Rains v. Flinn (In re Rains), 428 F.3d 893, 903 (9th Cir. 2005). However, the rule regarding the effect of an appeal on trial court jurisdiction is a judge-made prudential doctrine and is far from absolute. Id. at 904 (citing Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1190 (9th Cir. 2000)). While an appeal is pending, the trial court can still take certain actions and decide certain matters, so long as the trial court does not interfere with the status quo of the order on appeal. See Hill & Sanford, LLP v. Mirzai (In re Mirzai), 236 B.R. 8, 10 (9th Cir. BAP 1999) (stating that, while appeal is pending, trial court may still "correct clerical errors, take steps to maintain the status quo, take steps that aid in the appeal, award

8

attorney's fees, impose sanctions, and proceed with matters not involved in the appeal.").

As a matter of necessity, a bankruptcy court often needs to continue to preside over the administration of a bankruptcy case, even while appeals from prior, discrete orders are pending. A pending appeal does not preclude a bankruptcy court from doing so, as long as the bankruptcy court's subsequent actions and orders do not interfere with the status quo of the matters on appeal. See id. The Floreses have not identified any impact the bankruptcy court's order on Salven's final report had on their appeals, nor are we aware of any such impact.

Even if we were to assume that the bankruptcy court's order on the final report somehow could have affected matters on appeal, the Floreses' argument regarding exclusive appellate jurisdiction is fatally flawed as a factual matter. By virtue of the mandates the Court of Appeals issued during the first week of August 2013, all of the Floreses' appeals were disposed of and full jurisdiction was returned to the bankruptcy court before the bankruptcy court ruled on the final report. See Sgaraglino v. State Farm Fire & Cas. Co., 896 F.2d 420, 421 (9th Cir. 1990); In re Mirzai, 236 B.R. at 10-11. Accordingly, we reject on both factual and legal grounds the Floreses' argument regarding exclusive appellate jurisdiction.

The Floreses also assert that this Panel's dismissal of their prior appeals as moot automatically voided or invalidated

9

the bankruptcy court's vexatious litigant order.[4] This assertion is simply wrong. In the absence of an order explicitly vacating the orders on appeal, the dismissal of the appeals as moot did not automatically vacate the orders appealed. See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 22-24 (1994). Instead, upon learning that their appeals might be dismissed as moot, it was incumbent on the Floreses to request vacatur of the orders appealed on mootness grounds if that is what they desired. See United States v. Munsingwear, Inc., 340 U.S. 36, 39-41 (1950). Because they never requested a Munsingwear vacatur order, they forfeited any entitlement they otherwise might have held to such an order. Id. We cannot go back now into the prior appeals and fix the Floreses' omission. Id.

The Floreses claim that this result – the dismissal of their appeals as moot followed by the continued enforcement of the vexatious litigant order – effectively denied them due process of law. We disagree. The Floreses' due process argument is inconsistent with Munsingwear, which held that an appellant desiring vacatur of an order on appeal that has become moot must timely ask for vacatur. Id. In the prior appeals, the Floreses filed voluminous papers addressing the mootness issue both before and after this Panel ruled. Thus, the Floreses had ample opportunity to request a Munsingwear vacatur order in the prior

---

[4]The Floreses do not otherwise challenge the bankruptcy court's finding that their conduct violated the vexatious litigant order or its decision to disregard their opposition. Consequently, we decline to address any other issues potentially arising from these rulings. See Christian Legal Soc'y v. Wu, 626 F.3d 483, 487–88 (9th Cir. 2010); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010).

appeals.  Their failure to do so does not constitute a denial of due process.

The Floreses' other arguments on appeal focus on the bankruptcy court's order approving Armstrong's final fee application.  Indeed, the last seven pages of the Floreses' appeal brief appear exclusively devoted to the court's order on Armstrong's fees.  Even so, it is conceivable (albeit barely so) that the Floreses also meant to challenge the order on Salven's final report on the same grounds:  based on allegations of fraud on the court.  We must liberally interpret the Floreses' pro se appeal brief, so we will briefly address their fraud on the court argument.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988), partially overruled on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

The Floreses' fraud on the court argument is a nonstarter. The argument is premised on the allegation that Salven and his counsel Armstrong made misrepresentations to the bankruptcy court regarding: (1) the scope of their authority to represent the interests of both debtors; and (2) the scope of Armstrong's work on behalf of both debtors.  More specifically, the Floreses contend that neither Salven nor Armstrong was authorized to do anything on behalf of DDJ, LLC.  As the Floreses explain, Salven only was appointed to serve as chapter 7 trustee for DDJ, Inc., and Armstrong only was retained to represent Salven as chapter 7 trustee in the DDJ, Inc. bankruptcy case.  According to the Floreses, Salven and Armstrong led the court to believe that Armstrong's services were performed solely for DDJ, Inc. when in fact many of those services actually were performed for DDJ, LLC.

11

The parties' September 2007 settlement tells a different story. The settlement, agreed to by the Floreses and approved by the bankruptcy court, effectively gave Salven (as trustee for DDJ, Inc.) ownership and control over all of DDJ, LLC's claims against third parties and further provided that Salven (as trustee for DDJ, Inc.) would pursue the claims of both bankruptcy estates for the benefit of DDJ, Inc. Even though the Floreses might construe the settlement differently or might challenge the settlement's validity, it is hard to conceive how Salven's and Armstrong's statements to the court regarding their authority and their services could qualify as misrepresentations in light of the explicit terms of the September 2007 settlement.

In any event, as a matter of law, the statements Salven and Armstrong made to the court regarding the scope of their authority and the scope of work performed on behalf of the debtors do not constitute fraud on the court, given that the Floreses at all times had the opportunity to challenge any such statements they perceived as false. See Apotex Corp. v. Merck & Co., 507 F.3d 1357, 1361-62 (Fed. Cir. 2007) (holding that fraud on the court does not include statements made by adverse party that moving party had opportunity to challenge in court).

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's order overruling the Floreses' objections to Salven's final report.

12